UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNIVERSITY OF MEDICINE AND HEALTH SCIENCES LIMITED,** <br><br> Plaintiff, <br><br> v. <br><br> **CITIBANK N.A., AND ABC CORPORATIONS 1-10** <br><br> Defendants. | Case No. 1:25-cv-4694 |

## COMPLAINT

Plaintiff, University of Medicine and Health Sciences Limited ("UMHS"), brings this action against Citibank, N.A. ("Citibank") and alleges as follows:

### PARTIES

1. UMHS operates an international medical school located in the United States and the Caribbean Island of St Kitts.

2. UMHS is a corporation organized and existing under the laws of the country of St. Kitts and Nevis with its principal place of business in Basseterre, St. Kitts. UMHS is authorized to do business in the State of New York with Administrative Offices located at 275 7th Avenue 26th Floor, New York, New York.

3. Defendant Citibank is a national banking association organized under the laws of the United States with its principal place of business located at 5800 South Corporate Place, Sioux Falls, South Dakota 57108. Citibank is a citizen of the State of South Dakota for diversity purposes. Citibank maintains banking operations and is doing business in the State of New York.

1

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action on the basis of diversity of citizenship pursuant to 28 U.S.C. §1332, with an amount in controversy in excess of $75,000.00.

5. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

6. On or about June 4, 2024 at approximately 2:00 PM, UMHS's Chief Financial Officer ("CFO") Anne Prillaman attempted to access UMHS's Citibank corporate accounts online.

7. Ms. Prillaman was unable to login and spent over an hour on the Citibank helpline attempting to resolve the access issue, but Citibank was unable to assist her. At the time she called, Citibank had sent an email that passwords and user IDs had been changed by Anne Prillaman including hers. Even though Citibank was aware of these changes, at no time did the help desk raise this issue. Concurrently with receiving the Citibank email, Anne Prillaman encountered a spam attack on her email, causing her to miss the Citibank notification.

8. Shortly thereafter, all members of UMHS's finance department received an email from Citibank that their user ID number and passwords had been deleted as a user by the UMHS administrator (Anne Prillaman). As a result, none of the finance department including Anne Prillaman were able to access the UMHS' Citibank account ("Account").

9. UMHS employee, Lana Boryschak, immediately sent an email to UMHS' Citibank representative informing them that in fact Ms. Prillaman did not delete their User ID or password and that they need to have access to the account.

10. Only Ms. Prillaman had the ability, as system administrator, to change user permissions on UMHS' accounts.

11. UMHS contacted the Citibank helpline and reached out to its account representative, Daniel Gonzalez, to notify Citibank that Ms. Prillaman did not delete her account or change user permissions.

12. Ms. Prillaman then spoke with several representatives, including a supervisor, to attempt to regain access to the UMHS accounts, but Citibank could not give her access to the accounts. All of this occurred with Citibank being on notice that accounts had been changed without authorization

13. Consequently, the entire UMHS Financial Department was locked out on June 4, 2024.

14. UMHS also subsequently received emails from Citibank informing UMHS that its business account had been changed, along with email information and phone numbers having been changed and new users added.

15. UMHS directly informed Citibank, through their account representative, that there were issues with the UMHS accounts and that UMHS did not have access nor did UMHS make any changes to the accounts or account permissions.

16. At approximately 9:30 AM on June 5, 2024, Anne Prillaman notified Citibank again, that her department was still locked out of the Account and to lock down all UMHS accounts.

17. Shortly thereafter, Citibank informed Anne Prillaman that there had been several wire transfers at approximately 9 AM on June 5, 2024.

18. Despite Citibank's knowledge that UMHS was unable to access its accounts, and that unauthorized changes were progressing and had been made to users and access to UMHS accounts, on June 5, 2024, Citibank allowed six (6) fund transfers totaling $826,000.00 to be sent to bank accounts with Truist Financial Corporation, d/b/a/ Truist Bank, ("Truist") in Charlotte North Carolina from the UMHS account as follows: (i) $448,600.00 to Equilibrium Source Connection LLC; (ii) $149,970.00 to Frank King LLC; (iii) $99,890.00 to Frank King LLC; (iv) $50,000.00 to Equilibrium Source Connection LLC; (v) $49,800.00 to Frank King LLC; and (vi) $25,300.00 to Frank King LLC (collectively "Fraudulent Transfers").

19. Neither Frank King LLC nor Equilibrium Source Connection LLC ("Fraudulent Businesses") are vendors of UMHS, and no money was owed to either entity by UMHS.

20. At no time were the Fraudulent Businesses authorized recipients of UMHS funds.

21. Upon information and belief, after Secretary of State searches, the Fraudulent Businesses are not legitimate businesses and are not licensed with the Secretary of the State of North Carolina.

22. Internet searches for the Fraudulent Businesses have not returned any identified business.

23. Upon information and belief, Citibank contacted Truist on June 5, 2024 to alert Truist of the Fraudulent Transfers and to place a freeze on the funds. Citibank was aware of the Fraudulent Transfers between 9:30 and 10 AM.

24. Upon information and belief, as of June 5, 2024, Truist identified the Fraudulent Businesses as suspicious and knew the Fraudulent Businesses were not associated with a legitimate business entity at the time it deposited the transfer from UMHS into the Fraudulent Businesses accounts.

25. Upon information and belief, Truist identified the Fraudulent Business accounts as suspicious and knew the Fraudulent Business accounts were not associated with a legitimate business entity when it permitted the withdrawal of the funds from the Fraudulent Business accounts.

26. Despite repeated requests, UMHS has not been kept informed as to the status of the funds and has only received approximately $22,000.00 of the lost funds totalling $826,000.00 sought from Citibank.

27. As a result, UMHS has suffered damages by being forced to conduct its own investigation which has cost significant time, money, and resources.

28. Citibank has online and mobile banking services, which UMHS utilized.

29. Citibank's online banking services allow its customers, including UMHS, to transfer and/or wire funds through the online banking portal.

4

30. UMHS used an approval process and token before any transaction could be effectuated out of its bank accounts.

31. Despite using all of these precautions, and as a result of Citibank's failures to maintain secure online banking systems, an unauthorized individual was allowed to transfer funds out of the UMHS accounts without UMHS's authorization.

32. Citibank's data security policies and procedures, its efforts to monitor, secure against and defeat fraudulent activity in real time, and its responses to obvious red flags of identity theft and account takeover are clearly not operationalized or adequately developed, nor are those policies and procedures effective across its banking enterprise.

33. Citibank allowed unauthorized third-party actors to directly affect and change the user profile of UMHS' accounts, including usernames, passwords and token authority, to make the high-value Fraudulent Transfers.

34. Citibank's lack of technological tools and common-sense fraud prevention techniques allowed the Fraudulent Transfers to occur despite prior knowledge that there was an access issue with the UMHS accounts and direct notification from UMHS of the access issue.

35. Citibank's failure to immediately freeze the accounts upon learning of the fraud from UMHS allowed unauthorized access by third-party actors to make the Fraudulent Transfers.

36. Citibank has violated its obligations and duty to UMHS by:

   a. Failing to take appropriate action regarding the UMHS account when its representatives were notified that UMHS no longer had access or control over the Accounts.

   b. Failing to comply with the UCC §§4-A-202, 203, 204 in its handling of fraudulent and unauthorized electronic payment activity;

   c. Failing to adopt, implement, develop, and operationalize reasonable safeguards and procedures to protect the security and integrity of the financial information in its systems;

   d. Failing to adopt, implement, develop, and operationalize mitigation efforts to identify clear red flags that are indicative of fraud and/or theft; and

   e. Failing to act in good faith and in compliance with its security procedures and in compliance with Plaintiff's instructions.

## COUNT ONE
### UCC Violations

37. UMHS hereby incorporates paragraphs 1 through 36, inclusive of all subparts, as if set forth fully herein.

38. Under Article 4A of the Uniform Commercial Code financial institutions, Defendant Citibank is presumptively liable for unauthorized wire transfers.

39. Financial institutions are required to have processes and procedures in place to address red flags and issues when it arises related to accounts including, but not limited to, procedures for escalating or reviewing warnings.

40. The financial institutions are further required by law to have alerts when there are large and rapid influxes and outflows of funds following ACH or wire transfers.

41. Upon information and belief, Defendant did not have the appropriate procedures, as required by law, in place to warn, flag, and escalate warnings as a result of the Fraudulent Transfers.

42. Under UCC § 4A-202, Defendant Citibank failed to use proper security procedures and ignored red flags.

43. Under UCC § 4A-203, Citibank allowed and executed unauthorized payment orders.

44. Specifically, Citibank was aware that UMHS's accounts were no longer under UMHS's direct and exclusive control as of June 4, 2024.

45. Despite this knowledge, Defendant Citibank did nothing to prevent the Fraudulent Transfers on June 5, 2024, or to at a minimum immediately deny all access and transfers so that

a proper and thorough investigation could be conducted upon information received of a potential fraud.

46. Upon information and belief, Defendant Citibank did not have adequate processes and procedures in place, in violation of their obligations under the UCC and the Bank Secrecy Act, to effectively prevent the Fraudulent Transfers despite being fully notified of the issues related to UMHS's accounts. Defendant Citibank further failed to take good faith measures to prevent the unauthorized and fraudulent transfers in compliance with its existing security procedures and with UMHS' instructions.

47. Upon information and belief, Defendant Citibank, after improperly and solely authorizing the Fraudulent Transfer to occur, but failed to recover the funds.

48. To date, Defendant Citibank has not refunded, as required by UCC § 4A-204, the Fraudulent Transfers.

49. As a result of the process and procedural failures of Defendant, UMHS has suffered significant financial losses and has been damaged by the loss of $806,000.00.

WHEREFORE, plaintiff demands judgment against defendant in the amount of $806,000.00 together with interest thereon, and attorneys' fees, costs and disbursements incurred in this action together with such other and further relief that the Court may deem just and proper.

### COUNT TWO
Negligence

50. UMHS hereby incorporates paragraphs 1 through 49, inclusive of all subparts, as if set forth fully herein.

51. Defendant Citibank became aware as of 2 PM on June 4, 2024 that UMHS was no longer in control of its bank accounts.

52. Defendant Citibank owed a duty of care to UMHS to immediately assist with access to its accounts without delay.

53. Defendant Citibank owed a duty of care to UMHS to take appropriate action regarding the UMHS account when its representatives were notified that UMHS no longer had access or control over its accounts.

7

54. Defendant Citibank owed a duty of care to UMHS to prevent the unauthorized Fraudulent Transfer to fraudulent accounts at Truist Bank.

55. Defendant Citibank owed a duty of care to UMHS to notify Truist Bank of the nature of the Fraudulent Transfers and facilitate return of the funds to UMHS.

56. Defendant Citibank breached each of its duties and obligations to UMHS by:
    a. Failing to take appropriate action regarding the UMHS account when its representatives were notified that UMHS no longer had access or control over the Accounts
    b. Failing to have the proper processes and procedures to identify the fraudulent activities;
    c. Failing to have the proper processes and procedures in place to allow UMHS to regain access to its accounts; and
    d. Failing to have the proper processes and procedures to prevent the Fraudulent Transfers.

57. As a direct and proximate cause of Citibank's failures, UMHS has suffered significant financial losses and has been damaged by the loss of $806,000.00.

WHEREFORE, plaintiff demands judgment against defendant in the amount of $806,000.00 together with interest thereon, and attorneys' fees, costs and disbursements incurred in this action together with such other and further relief that the Court may deem just and proper.

## COUNT THREE
Breach of Contract

58. UMHS hereby incorporates paragraphs 1 through 57, inclusive of all subparts, as if set forth fully herein.

59. Upon information and belief, Citibank has a depository relationship with UMHS codified by a Depository Account Agreement ("DAA").

60. Upon information and belief, Citibank breached that contract by failing to: (i) take appropriate actions upon learning that UMHS no longer had access or control over its accounts; and (ii) take appropriate actions to prevent the funds from leaving UMHS's depository accounts with Citibank despite immediately being notified of issues with access to the accounts.

61. As a direct and proximate cause of Citibank's breach of contract, UMHS has suffered significant financial losses and has been damaged by the loss of $806,000.00.

WHEREFORE, plaintiff demands judgment against defendant in the amount of $806,000.00 together with interest thereon, and attorneys' fees, costs and disbursements incurred in this action together with such other and further relief that the Court may deem just and proper.

### PRAYER FOR RELIEF

Plaintiff respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Award Plaintiff appropriate monetary relief, including actual damages, statutory damages, or any other relief as may be applicable and appropriate;
B. Awarding Plaintiff equitable, injunctive, and declaratory relief, as may be appropriate.
C. Awarding Plaintiff pre-judgment and post-judgment interest to the maximum extent allowable;
D. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses, as allowable; and
E. Awarding Plaintiff such other favorable relief as allowable under law.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims so triable.

Dated: June 4, 2025                                        Respectfully submitted,


*/s/ Rebecca L. Rakoski*

Rebecca L. Rakoski, Esquire
XPAN Law Partners LLC
757 Third Avenue, 20th Floor
New York, New York 10017
rrakoski@xpanlawpartners.com
pisbill@xpanlawpartners.com
Tel: (267) 388-0897

*Counsel for Plaintiff University of Medicine and Health Sciences Limited*